[No. B001630. Second Dist., Div. Seven. Oct. 19, 1984.]

LOWELL HODSON et al., Plaintiffs and Appellants, v.
MARION J. WOODS, as Director, etc., Defendant and Appellant.

**COUNSEL**

James S. Carroll and Lew Hollman for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Thomas E. Warriner, Assistant Attorney General, Anne S. Pressman and Richard A. Spector, Deputy Attorneys General, for Defendant and Appellant.

**OPINION**

**JOHNSON, J.**—This appeal involves a dispute over a disabled person's share of cost for services under California's In-Home Supportive Services

program (IHSS). Specifically, the dispute is over the amount of a spouse's income that can be considered or "deemed" available to a disabled person for the purpose of determining how much of the cost of IHSS services the disabled person must bear.

## I. FACTS AND PROCEEDINGS BELOW

Petitioner, Donna Hodson, suffers from multiple sclerosis and a spinal impairment along with various complications which render her totally disabled. She is confined to bed. Ms. Hodson is considered "severely impaired" and entitled to the maximum amount of benefits under the IHSS program. (Welf. & Inst. Code, § 12304.) Under IHSS, Ms. Hodson receives domestic and related services, protective supervision and a variety of nonmedical personal services which make it possible for her to live in comfort and safety in her home. (Welf. & Inst. Code, §§ 12300, 12304.)

The Hodson's gross monthly income is $2,082. Ms. Hodson receives $343 in Social Security disability benefits and Mr. Hodson has gross earnings of $1,739. The cost of Ms. Hodson's In-Home Supportive Services is $767 per month.[1] In 1981, Ms. Hodson's monthly share of cost for IHSS services was increased to $639. There is no explanation in the record for this increase.

In calculating Ms. Hodson's share of cost, the respondent, Director of the Department of Social Services, used a hybrid formula which crosses federal welfare rules with state welfare rules to arrive at the amount of income available to pay for IHSS services. The director used the federal welfare benefit level to determine the amount of money Mr. Hodson needed for his own living costs. The director used the higher state welfare benefit level to determine the amount of money Ms. Hodson needed for her living costs. The director then combined these two amounts and deducted the result from the Hodson's countable income[2] to determine Ms. Hodson's share of cost. The calculation was as follows:

$\quad$ $ 323 $\quad$ (Ms. Hodson's countable income)
$\quad$ $\underline{+837}$ $\quad$ (Mr. Hodson's countable income)
$\quad$ $1160 $\quad$ (total countable income)
$\quad$ $\underline{-119}$ $\quad$ (allowance for Mr. Hodson's needs based on federal welfare benefit level)
$\quad$ $1041

---

[1] We have rounded these amounts to the nearest dollar.

[2] Countable income means income remaining after applying exclusions and deductions authorized by the welfare rules.

$\underline{-402}$ (allowance for Ms. Hodson's needs based on state welfare benefit level)

$ 639 (Ms. Hodson's share of cost)

Ms. Hodson contended the needs of both her husband and herself should be calculated on the basis of the state welfare benefit level. This would reduce her share of cost to $414 as illustrated below.

$1160 (total countable income)

$\underline{-746}$ (allowance for needs of Mr. and Ms. Hodson based on state welfare benefit level)

$ 414 (Ms. Hodson's share of cost)

Ms. Hodson appealed the increase in her share of cost to the director who, after an administrative hearing, rejected her contention and upheld the increase. She then brought this action for mandamus and declaratory relief challenging the director's administrative decision and the validity of the regulations on which it was based.

The trial court granted a peremptory writ of mandate commanding the director to set aside his decision and to recalculate Ms. Hodson's share of cost using the state welfare benefit rate for both Mr. and Ms. Hodson and awarded attorneys fees to Ms. Hodson. The court denied the request for declaratory relief.

The director appeals from the portion of the judgment granting the writ of mandate and attorneys fees.[3] The Hodsons cross-appeal from the denial of declaratory relief. We affirm the judgment.

## II. DISCUSSION

A. *The Relationship Between In-Home Supportive Services and Cash Assistance Programs for the Aged, Blind and Disabled.*

An understanding of the IHSS program and the cash assistance program for the aged, blind and disabled is useful in understanding the issue in this case and the reasons for our decision.

In California there are two complementary programs of cash assistance for the needy aged, blind and disabled. The Supplemental Security Income Program (SSI) is a uniform, federally administered, nationwide program

---

[3]The appeal of the award of attorney's fees is predicated solely on the director's contention the judgment granting a writ of mandate should be reversed. (See Welf. & Inst. Code, § 10962.) Our affirmance of the writ disposes of the attorneys' fees issue.

guaranteeing a monthly federal payment to needy aged, blind and disabled persons. (42 U.S.C. § 1381 et seq.) Under the SSI program the states are authorized to supplement the federal payments with state funds and may contract with the federal government for administration of the state supplement. (42 U.S.C. § 1382e.) The amount of the state supplemental payment (SSP) is left to the discretion of the state but if the state desires federal administration of its SSP it must agree to the rules of eligibility and administration determined by the Secretary of the Department of Health and Human Services to be necessary to achieve efficient and effective administration of both programs. (42 U.S.C. § 1382e(b); 20 C.F.R. § 416.2001 et seq. (1984).) California has opted to make supplemental payments and to have those payments administered by the federal government. (Welf. & Inst. Code, §§ 12001, 12100.)[4]

The In-Home Supportive Services program was enacted in the same legislation that established state supplemental payments. (Stats. 1973, ch. 1216, § 37.) The purpose of both programs is "to provide persons whose need results from age, blindness or disability with assistance and services which will encourage them to make greater efforts to achieve self-care and self-maintenance, whenever feasible, and to enlarge their opportunities for independence." (§ 12002.) IHSS addresses this goal by providing the aged, blind and disabled with domestic, protective and transportation services which make it possible for those persons to live safely in their own homes rather than be forced into a nursing home or institution.

In order to be eligible for IHSS, the individual must demonstrate she needs such services (§ 12301.1) and that her income is insufficient to pay for them. (§§ 12304, 12304.5.)

An aged, blind or disabled individual who qualifies for cash assistance is automatically financially eligible for services under the IHSS program. (§ 12304.) An individual, such as Ms. Hodson, who would be eligible for cash assistance "except for [her] excess income, is eligible to receive a payment . . . to purchase in-home supportive services if [her] income is insufficient to provide for the cost of such care . . ." and she establishes the need for services. (§ 12304.5.) The amount by which the individual's income exceeds the need level for cash assistance constitutes her share of cost for IHSS services. (Department of Social Services, Manual of Policies and Procedures (MPP) 30-455.233.)

"Income" for purposes of the SSP and IHSS programs is defined in section 12051 by reference to the definition of income in the federal SSI pro-

---

[4]Unless otherwise noted future references are to the Welfare and Institutions Code.

gram. Income in the SSI program means earned and unearned income. Earned income is defined as wages or net earnings from self-employment (42 U.S.C. § 1382a(a)(1).) Unearned income means all other income (42 U.S.C. § 1382a(a)(2).) Any income of an ineligible spouse is expressly included in the unearned income of the eligible individual "except to the extent determined by the secretary to be inequitable under the circumstances." (42 U.S.C. § 1382c(f)(1).)

As we explain below, the director's regulations and section 12051 require the use of the SSP need level in determining the needs of the ineligible spouse for the purpose of deeming income to an eligible individual. Therefore, the trial court was correct in ruling that the director failed to proceed in the manner required by law in the calculation of Ms. Hodson's share of costs for IHSS services.

B. *In Computing Petitioners' Share of Cost the Director Failed to Proceed in the Manner Required by Federal and State Law and His Own Regulations.*

 The director's own regulation which clearly comports with section 12051, provides "Deeming procedures shall conform to those specified in [the federal SSI regulations.] (MPP § 30-475.213.) The deeming procedure followed in Ms. Hodson's case conforms to the federal regulations only to a point. Both procedures apply the applicable SSI exemptions and exclusions to the spouse's earnings. But while the SSI procedure recognizes the needs of the ineligible spouse (20 C.F.R. § 416.1163(c) (1984)), the director's procedure does not.

The director argues it is unnecessary for him to include an allocation for the needs of the ineligible spouse because such an allocation is already included in the SSI deeming calculation. We reject this argument for the reasons given below.

Under section 12051, the director must define income as it is defined in the SSI program. Deemed income in the SSI program is defined as "any income . . . of [the ineligible] spouse . . . except to the extent determined by the secretary to be inequitable under the circumstances." (42 U.S.C. § 1382c(f)(1).) Thus, the secretary's determination of what is equitable under the circumstances is, in effect, part of the federal statute, (*Fleshman* v. *Heckler* (5th Cir. 1983) 709 F.2d 999, 1002-1003) and the director is bound by that determination by reason of section 12051 and his own regulation.[5]

---

[5]We disagree with the director's contention section 12051 incorporates only one section of the SSI statute, 42 United States Code section 1382a, which defines income as earned and unearned.

Unearned income is further defined by 42 United States Code section 1382c(f)(1) to include the income of an ineligible spouse. This provision was held to come within the scope

The secretary has determined equity requires the income of the ineligible spouse be reduced by an allocation reflecting that spouse's own living expenses. (43 Fed.Reg. 39566 (Sept. 6, 1978).) In arriving at the amount of such allocation the secretary considered various alternatives but settled on the incremental difference between the SSI need level for an eligible individual and an eligible couple. The secretary chose this amount because it allows an eligible individual and ineligible spouse as much income as a couple where both members are eligible for benefits. (*Ibid.*)

Because the secretary has determined equity requires an allocation for the ineligible spouse's living expenses equal to the difference between an individual's need level and a couple's need level in the SSI program the provisions of section 12051 require the director to allocate an amount equal to the difference between an individual's and a couple's need level in the SSP program. Failure to do so would result in denying SSP benefits to eligible individuals living with ineligible spouses even though their combined income is less than the income of a couple where both members are eligible for benefits. To illustrate: an eligible couple with countable income of $700 a month would receive an SSP benefit of $46, but an eligible individual with no income of her own living with an ineligible spouse whose countable income is $525 a month would receive no benefit. It was exactly this inequitable treatment the secretary's deeming procedure was designed to avoid. (43 Fed.Reg. 39566, *supra.*)

It is not illogical, as the director contends, to recognize the higher SSP need levels in allowing for the living costs of an ineligible spouse. In adopting the SSI deeming procedure the secretary explained that the allowances for the needs of ineligible family members were based on the uniform, nationwide SSI need levels but "[t]he individual states can adjust the supplementation levels if they wish to reflect the cost of living as applicable in their State [*sic*]." (43 Fed.Reg., *supra*, at p. 39567.) The flexibility in the regulation, allowing the states to increase the spousal allowance to reflect the cost of living, was an important consideration in a decision upholding the regulation against the claim the allowance was arbitrary and capricious. (*Kollett* v. *Harris* (1st Cir. 1980) 619 F.2d 134, 142-143.) The California Legislature, as we have already noted, has determined the basic federal SSI need levels do not reflect the minimum subsistence level for adults in this state. (See § 12200.)

On the other hand, the deeming procedure advocated by the director seems to us illogical. It fails to recognize the incontrovertible fact that Cal-

---

of section 12051 in *Disabled & Blind Action Committee of Cal.* v. *Jenkins* (1974) 44 Cal.App.3d 74, 82 [118 Cal.Rptr. 536]. If the director's argument were accepted, he would have no authority to deem Mr. Hodson's income available to Ms. Hodson because there is no indication in section 1382a that an individual's income includes the income of her spouse.

ifornia's cost of living is higher than in other regions of the country. Moreover, it encourages families to break up and workers to quit their jobs resulting in welfare costs even higher than those over which the director expressed concern in his argument before us.[6] In the example above we pointed out an eligible individual with no income of her own would receive no assistance if her ineligible spouse had income as little as $525 a month. If this couple were to separate, the eligible individual would receive an SSI/SSP grant of $402 a month, almost doubling the former income. Although they would no longer enjoy economies of scale by living together, even with economies of scale two cannot live as cheaply as one. If a couple such as the Hodsons separated, the draw on the state treasury would increase by about 700 percent. Instead of contributing a mere $128 a month toward the cost of Ms. Hodson's supportive services, the state would pay the full cost, $767, plus a $79 a month SSP benefit for a total of $846 a month.

The director advances a second justification for his computation of Ms. Hodson's deemed income. The director points to a provision in the SSI deeming regulation which states the combined countable income of the eligible individual and the ineligible spouse is subtracted from the SSI benefit rate for an eligible couple to determine the SSI payment to the eligible individual. (20 C.F.R. § 416.1163(c)(2)(iii) (1984).) Based on this provision the director argues the allocation for the needs of an ineligible spouse is not part of the process of determining income. Rather, he contends, it is part of the process for determining the benefit payment to the eligible individual. Because section 12051 only incorporates the SSI income rules, the director concludes he is not required to follow the SSI methodology for allocating income to an ineligible spouse—a function of the benefit payment process.

The director is correct in stating that calculation of income and calculation of benefits are separate and distinct processes. (See 42 U.S.C. §§ 1381a, 1382(a), (b).) The director is incorrect in characterizing deeming of income as part of the benefit payment process. The deeming procedure is authorized by 42 United States Code section 1382c(f)(1) which specifically provides an "individual's *income* . . . shall be deemed to include any *income* of [an ineligible] spouse . . . ." (Italics added.) (See *Faidley* v. *Harris* (10th Cir. 1981) 656 F.2d 582, 583.) The deeming rules are contained in subpart K of the SSI regulations which pertain to the calculation of income. Regulation 416.1104 states, "In some situations we must consider the income of certain people with whom you live as available to you and part of your *income*. These rules are described in §§ 416.1160 through 416.1169. *We use all of*

---

[6] At oral argument on this appeal, the director conceded these were foreseeable consequences of his deeming procedure although not intended by him.

*these rules* to determine the amount of your *countable income*—the amount that is left after we subtract *what is not income or is not counted.*'' (20 C.F.R. § 416.1104 (1984).) (Italics added.)

The purpose of using the couple's benefit rate in the deeming process is not to determine the benefit payment to the eligible individual.[7] Rather, it is merely a shorthand method for allocating a portion of the ineligible spouse's income to his needs *before* deeming the remainder as income of the eligible individual. The result would be the same if the allowance for the ineligible spouse's needs was made a separate step and the remaining income subtracted from the benefit level for an eligible individual.[8]

Using the SSI rate for an eligible couple to determine the allocation for the needs of the ineligible spouse serves two purposes. It eliminates the mathematical step of computing the incremental difference between the benefit rate for an eligible couple and an eligible individual (see fn. 7 above), and it serves to underscore the point made in the preamble to the regulations that equity requires an eligible individual with an ineligible spouse be permitted the same amount of income as an eligible couple (see discussion, *ante,* p. 1233). In adopting the deeming regulations the secretary explained, "This amendment to the regulations provides the methodology to be used in determining the amount of *income* to be deemed from an ineligible spouse to an eligible individual." (43 Fed.Reg., *supra,* at p. 39564.) (Italics added.) The allocation for the needs of the ineligible spouse is plainly part of the process for determining the amount of income to be deemed.

We conclude therefore that for purposes of deeming in the IHSS program, the director must follow the SSI formula substituting the SSP level for a couple in place of the SSI level.

---

[7]In many cases arrival at the benefit payment amount may be a by-product of the deeming formula, as in the first example in footnote 8, *post*. In other cases, using the deeming formula to compute the individual's benefit payment results in an amount higher than if no income were deemed. The deeming regulations provide if this occurs the individual's benefit is calculated by subtracting only his or her own income from the SSI benefit rate for an individual. (20 C.F.R. § 416.1163(c)(3) (1983).) This is further evidence use of the couple's benefit rate is only a tool for calculating income not for calculating benefits.

[8]Assume an eligible individual with no income and an eligible spouse with countable income of $300 a month. Under the regulations the calculation is:

| | |
|---|---|
| $357 | SSI need level for eligible couple |
| −300 | countable income (deemed from spouse) |
| $ 57 | SSI benefit to eligible individual |

Alternatively, the deemed income could be calculated:

| | |
|---|---|
| $300 | countable income |
| −119 | needs of ineligible spouse (difference between SSI level for individual, $235, and couple, $357). |
| $181 | countable income (deemed from spouse) |
| $238 | SSI need level for individual |
| −181 | deemed income |
| $ 57 | SSI benefit to eligible individual |

C. *Petitioner's Request for Declaratory Relief Was Properly Denied.*

In addition to a writ of mandate, Ms. Hodson sought a declaration that the director's IHSS regulations on deeming income are invalid. The trial court concluded, and we have affirmed, the regulations themselves are valid and clearly comport with the requirements of section 12051. The error was in the manner those regulations were interpreted and applied.

DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Thompson, J., concurred.